```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                    NORTHERN DIVISION AT COVINGTON
```

**CIVIL ACTION NO. 06-136**

**TERRY ZURBORG**                                                   **PLAINTIFF**

**VS.**                          <u>**OPINION AND ORDER**</u>

**LINDA S. McMAHON**
**COMMISSIONER OF SOCIAL SECURITY**               **DEFENDANT**

      This matter is before the court on the motion for summary judgment of the plaintiff (Doc. 10) and the cross-motion for summary judgment of the Commissioner (Doc. 11). The plaintiff has also filed a motion for a hearing on this matter. (Doc. 12).

      In reviewing the decision of the ALJ in Social Security cases, the only issue before the court is whether the decision is supported by substantial evidence. <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. Even if the evidence could also support another conclusion, the decision of the ALJ must stand if the evidence could reasonably support the conclusion reached." <u>Alexander v. Apfel</u>, 17 Fed. Appx. 298(6th Cir. 2001)(unreported)(citing <u>Buxton v. Halter</u>, 246 F.3d 762, 772-73 (6th Cir. Aug. 16, 2001)).

      In order to qualify for disability benefits, a claimant must establish that he is disabled within the meaning of the Social

1

Security Act. 42 U.S.C. § 423(a)(1)(D). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(2)(A).

The Social Security Act requires the Commissioner to follow a five-step process when making a determination on a claim of disability. Heston v. Commissioner of Social Security, 245 F.3d 528 (6th Cir. 2001). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity." Heston, 245 F.3d at 534 (citing Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990)( citing 20 C.F.R. 404.1520(b)). Second, if the claimant is not engaged in substantial gainful activity, he must demonstrate he suffers from a severe impairment. Id. "A 'severe impairment' is one which 'significantly limits . . . physical or mental ability to do basic work activities.'" Id. (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)). Third, if claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets or equals a listed impairment at 20 C.F.R. part 404, subpart P, appendix 1, then plaintiff is presumed disabled regardless of age, education or work experience. Id. (citing 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000)). Fourth, claimant is not disabled if his impairment(s) does not prevent him from doing his past relevant

2

work. Id. Lastly, even if the claimant cannot perform his past relevant work, he is not disabled if he can perform other work which exists in the national economy. Id. (citing Abbott, 905 F.2d at 923).

The claimant has the burden of establishing that he is disabled, but the Commissioner bears the burden of establishing that the claimant can perform other work existing in the national economy.

At the time of the ALJ's decision, claimant was fifty-six years old. The claimant has a high school education, and has prior relevant work as a fork lift driver. He worked for the Overhead Door Company for fifteen years before leaving due to his alleged disability.

The claimant has diabetes, hypertension, shoulder pain, diarrhea from a colon resection and anxiety, but his chief complaint is his vision. The claimant testified that he had to stop working because he was constantly making mistakes as a result of not being able to read the computer. He experiences severe blurriness at least three days a week, which can last all day long.

An evidentiary hearing was held on November 18, 2003. At the evidentiary hearing, the ALJ sought testimony from the claimant and a vocational expert (VE). The VE testified that based upon the restrictions contained in the ALJ's first hypothetical question, he believed the claimant could perform other work available in the national economy. The VE identified

3

the codes in the Dictionary of Occupational Titles (DOT) that corresponded to the jobs he believed the claimant could perform. The ALJ granted claimant's counsel's request for additional time to review the DOT codes and submit additional arguments.

Approximately two weeks later, counsel submitted a letter challenging some of the VE's testimony. Specifically, counsel found that several of the DOT codes identified by the VE exceeded the restrictions incorporated into the ALJ's hypothetical question.

The ALJ scheduled a second evidentiary hearing for March 25, 2004. At the second hearing, the ALJ questioned the VE about counsel's concerns. Upon hearing the testimony and reviewing the record, the ALJ performed the requisite five step evaluation for determining disability.

At step 1, the ALJ determined that the claimant had not been engaged in substantial gainful activity since the alleged onset of disability. At step 2, the ALJ determined that the claimant's diabetes, hypertension, cataracts, Bell's palsy, shoulder pain and anxiety in combination are "severe."

At step 3, the ALJ determined that, although claimant's impairments are "severe" in combination, he does not have an impairment or combination thereof that is listed in or equal to one listed at 20 C.F.R. part 404, subpart P, appendix 1. At step 4, the ALJ found the claimant is unable to perform his past relevant work.

At step 5, the ALJ found that the claimant has a residual

4

functional capacity for light work, but is restricted to no "overhead reaching on a frequent, repetitive basis", "[h]e cannot do fine reading or other work requiring fine vision" and, "he has the mental limitations set out at exhibit 9F." (AR 23).

The vocational expert opined that given claimant's age, education, work history and the limitations assigned by the ALJ, that a significant number of jobs existed in the national economy that the claimant could perform. Based on this testimony, the ALJ found the claimant not disabled.

The claimant argues that the ALJ erred in relying on the testimony of VE because his testimony was proven to be erroneous. The Commissioner admits in her brief that the VE identified jobs that fell outside the parameters of the ALJ's hypothetical question, but argues that the ALJ's decision was based upon substantial evidence.

The court finds that the Commissioner failed to meet her burden at step five. Specifically, the ALJ relied on the flawed testimony of the VE in finding that the claimant could perform other work existing in the national economy.

The court finds that the VE's testimony is flawed in two respects: 1) the VE identified jobs as being appropriate that did not meet the parameters of the hypothetical question; and 2) the VE did not understand the visual limitations identified in the hypothetical question.

First, as the Commissioner has admitted, the VE incorrectly identified jobs as being appropriate for a person limited to

5

light work when, in fact, some of the jobs identified require the performance of medium or heavy work.  In addition, at least one of the jobs identified by the VE as being appropriate require a transferable skill level that the claimant does not possess.  The ALJ held a second hearing to address these inconsistencies.

At the second hearing, however, the VE contradicted himself. For example, the ALJ specifically asked the VE to identify the level of work required for DOT 905.687-010.  The VE responded that "905-687-010 is a light job with an SVP of 2, and it comes directly from the [DOT] 1991."  (AR 527).  Yet, on cross examination, when counsel also asked the VE whether 905.687-010 was performed at a light level, the VE looked up the code in the DOT and testified that 905.687-010 is classified as heavy.

The VE provided inconsistent testimony on at least two other DOT numbers that he had earlier testified were appropriate for light work.  (AR 535, 537).  The Commissioner admits in her brief that five of the jobs identified by the VE as being appropriate did not meet the parameters of the hypothetical question.

The court also finds the VE's testimony is flawed with respect to the remaining jobs because the VE did not understand the visual limitations being set forth by the ALJ's hypothetical. In the first hearing the following exchange occurred between counsel and the VE:

> Q.  Well, what's your definition of fine reading?
> A. Two-thirds of the time or more that's required and its text reading.
> Q. Is that the definition the Judge gave you?
> A. Sir, I don't think she gave me a definition.  She just used the term fine reading.  But I defined it as more than

6

>    two-thirds.  You've defined it as how?
>    Q.  I didn't define it.
>    A. Well, I just did.
>    . . .
>    A. . . . detailed fine reading would be more than two-thirds of the time.  It would be reading text.  I don't even think he'd probably be reading a third of the day, and he certainly wouldn't be reading text.  He'd be reading bills of laden and he might read an order form, but that is not extensive reading.
>    Q. And that's not fine reading?
>    A. I don't perceive it as fine reading.
>    Q. You, you describe fine reading then as the amount of time or, what you're actually reading.
>    A. Text.
>    Q. Text?
>    A. Text.
>    Q. All right. Text is fine reading.
>    A. I would consider text fine reading.
>    Q. Okay. And these jobs, are they pretty equal as far as the amount of fine reading per day?
>    A. I believe so.
>    Q.  And how much is that?
>    A.  I believe that the other [sic] would be probably less than 25 percent of his time would be involved in any kind of reading.

(AR 505-07).

In her hypothetical question, the ALJ stated that the VE should assume that the person could not perform any "fine reading in terms of reading small print or having to need extremely fine vision."  Instead of asking for clarification or a better definition, the VE defined "fine reading" himself as requiring the reading of text for more than two-thirds of a work day.  The VE then identified several jobs as being appropriate for a person who could not perform any fine reading even though some of these jobs required up to 25 percent of a work day be spent performing this task.

This conflict is also evidenced by the testimony at the second hearing.  There, the ALJ asked the VE whether he

7

considered the visual limitations in answering the hypothetical questions posed during the first hearing.  The VE did not specifically answer the question.  Instead, he explained how a vision impairment is evaluated in determining what type of work a person can perform.  The VE did not state whether he performed this analysis in the case at bar.  (See AR 530-531).

In addition, during the cross-examination at the second hearing, the VE again indicated he did not understand the extent of the vision limitations being imposed by the hypothetical question:

> Q. And you would also agree that, that it does have frequent near acuity required?
> A.  Well, it, it requires him to read orders to determine position of equipment.
> Q. Okay.
> A. He connects equipment, electrical lines.
> Q. So it does require near visual acuity, is that correct?
> A.  I'm not quite sure I'd know the definition of near visual acuity.
> Q. Well, it requires them to read closeup.
> A. It requires him to read, yes.
> Q. Okay.  It requires visual acuity then?
> A. To a -- to do reading, yes.

(AR 537).

In her decision, the ALJ stated that she found that the claimant had the RFC to perform light work with the additional restriction that "he cannot do fine reading or other work requiring fine vision." (AR 36).  It is clear from the VE's testimony that he did not understand what the ALJ meant by "no fine reading."  Instead, the VE came up with his own definition, not necessarily one defined in the industry.

The claimant clearly has vision problems and the VE's

8

testimony should have taken these limitations into account. Since the VE's testimony demonstrates that he did not understand what the ALJ meant by "no fine reading," the testimony does not provide substantial evidence to support the ALJ's finding that a significant number of jobs exist that the claimant can perform. Accordingly, the court finds that the Commissioner did not meet her burden at step 5.

For the foregoing reasons, the court finds that the ALJ's decision is not based on substantial evidence. Once a court determines that substantial evidence does not support the Commissioner's decision, it can reverse the decision and award benefits only if all essential factual issues have been resolved and the record establishes a claimant is entitled to benefits. Faucher v. Secretary of Health and Human Services, 17 F.3d 171, 176 (6th Cir. 1994). Where, as here, the factual issues have not been resolved, the court shall remand the case for further consideration. Id.

The court having found that the ALJ's decision is not based on substantial evidence, it need not consider claimant's argument that he was denied due process by the ALJ's failure to permit him to submit his additional vocational evidence. Upon remand, the Commissioner shall obtain the services of a new VE, and the claimant shall be permitted to submit any additional vocational evidence he believes is necessary.

Therefore, the court being advised,

**IT IS ORDERED** that the motion for summary judgment of the

9

claimant's request for a reversal of the Commissioner's decision, and **denied in part** as to his request for a court ordered award of benefits, that claimant's motion for oral argument (Doc. 12) be, and it hereby is, **denied,** and that the cross-motion for summary judgment of the Commissioner (Doc. 11) be, and it hereby is, **denied.**

**IT IS FURTHER ORDERED** that this action be, and it is, hereby **remanded,** under sentence four of 42 U.S.C. § 405(g), to the Commissioner for further proceedings and that the matter be assigned to a new ALJ.

This 28th day of February, 2007.



**Signed By:**
*William O. Bertelsman* WOB
**United States District Judge**

10